IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

SARA ROSE TRACER,

                    Plaintiff,                    03:10-CV-6180-HZ

          v.                              OPINION AND ORDER

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.


Alan Stuart Graf
Alan Stuart Graf P.C.
316 Second Rd
Summertown, TN 38483

        Attorney for Plaintiff

Adrian L. Brown
U.S. Attorney's Office
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204

1 - OPINION AND ORDER

Jordan D. Goddard
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

      Attorneys for Defendant

HERNANDEZ, District Judge:

      Plaintiff Sara Tracer appeals the Commissioner's decision denying her applications for child's insurance benefits and supplemental security income payments under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is affirmed.

FACTUAL BACKGROUND

      Tracer alleged disability beginning March 1, 2003, due to depression, anxiety, poor short term memory, dyslexia, back pain, problems in both knees and both ankles, difficulty rising from a sitting position, and inability to walk more than a few feet. Admin. R. 209-10. Tracer reached the age of 22 on August 7, 2003. *Id.* at 181. She must establish she became disabled on or before that date to prevail on her child's insurance benefits claim under Title II. 20 C.F.R. § 404.350(a)(5). The relevant period for her Title XVI claim commenced when she filed her applications in September 2007, because supplemental security income payments cannot be made retroactively. Admin. R. 206. 20 C.F.R. §§ 416.202, 416.501.

      The administrative law judge (ALJ) applied the five-step sequential disability determination process set forth in 20 C.F.R. §§ 404.1520 and 416.920. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). She found Tracer satisfied the severity requirement of step two because her ability to perform work activities is limited by major depressive disorder, borderline

intellectual functioning, borderline personality disorder, histrionic personality disorder, anxiety disorder, learning disorders in written language and math, obesity, a pain disorder, and chronic low back pain.  Admin. R. 13.

The ALJ determined that despite her impairments, Tracer retained the residual functional capacity (RFC) to perform work at the light level of exertion with limitations on postural activities, such as climbing, stooping, kneeling, and crawling.  She found Tracer could understand, remember, and carry out simple tasks, but not complex or detailed tasks.  She found Tracer required help to learn a job, but could perform work without special help after learning it. The ALJ found Tracer should not work directly with the public or with coworkers, but could get along with coworkers on a routine, casual, social basis.  *Id.* at 16.

The ALJ elicited testimony from a vocational expert (VE) based on her assessment of Tracer's RFC.  *Id.* at 77-78.  The VE testified that a person of Tracer's age, education, work experience, and RFC would be able to perform the activities required for light unskilled occupations such as packing line worker, small products assembler II, and bagger.  *Id.* at 78-79. The ALJ concluded that Tracer had failed to prove she was disabled within the meaning of the Social Security Act.  *Id.* at 24.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure.  *See Valentine v.*

*Commissioner*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

DISCUSSION

I.      Claims of Error

Tracer contends the ALJ failed to assess her RFC accurately because she improperly

discredited Tracer's subjective statements and those of her mother.  Tracer contends the ALJ

improperly relied on VE testimony that conflicts with the information in the Dictionary of

Occupational Titles (DOT).  Tracer contends the ALJ did not fully develop the record because

she did not obtain a medical expert's opinion based on Job Corps records submitted after the

administrative hearing.

II.     RFC Assessment

        A.      Credibility Determination

        In her application documents, Tracer alleged disability based on depression, anxiety, poor

short term memory, dyslexia, back pain, pain in both knees and both ankles, difficulty rising

from a sitting position, and inability to walk more than a few feet.  Admin. R. 209-10.  In 2007,

she submitted a function report indicating that on most days she stayed in bed all day and only

left the trailer in which she and her boyfriend lived approximately once a month.  Tracer said her

boyfriend did all the household chores.  *Id.* at 224.  Her only activities were watching movies and

using a computer to communicate with friends and her mother.  *Id.* at 226.  In November 2007,

Tracer submitted a questionnaire indicating she experienced pain in the back and stomach and

constant aching all over her body.  She reported she needed help with all activities, including

personal hygiene and grooming.  *Id.* at 228-29, 231-32.  In October 2008, Tracer submitted

another written statement indicating she was entirely dependent on her boyfriend for help getting

up, walking, household chores, and matters of personal care and hygiene.  *Id.* at 255-56.

In October 2009, Tracer testified at the administrative hearing on her claim. *Id.* at 29, 49-64. Tracer said she moved back into her mother's home in January 2009, and had not been out of the house for ten months except to attend the hearing. *Id.* at 51, 54, 58. The thought of leaving the house made her feel panicky. She had lived in a trailer with her boyfriend for four or five years, during which she had depended on him to help her get up, walk, and do everything. He had forced her to go to the store with him sometimes. *Id.* at 57. She believed her ability to move around on her own had improved while living with her mother, but her feelings of panic about leaving the house had worsened. *Id.* at 58.

Tracer testified she dropped out of high school because she could not tolerate the long bus ride with people she did not know. *Id.* at 59. She then entered a Job Corps program where she lived in a dorm and took classes toward earning a GED and for business office skills. *Id.* at 59. While participating in the Job Corps program, she was sent to counseling and evaluated by on-site medical staff. This resulted in a medical dismissal from the Job Corps program. Tracer did not understand the reason for the dismissal, because she felt she had done well in classes and had enjoyed the program. *Id.* at 59-61.

Tracer testified that she declined to undergo available treatment at Lincoln County Mental Health (LCMH) because they would not permit her mother to accompany her during individual counseling sessions. *Id.* at 53.

The ALJ accepted that Tracer has significant mental impairments resulting in the inability to understand and carry out detailed or complex tasks, work directly with the public or coworkers, and learn unskilled jobs without special help. The ALJ also believed Tracer's claim of physical limitations restricting her to light work with postural limitations. The ALJ did not

accept Tracer's allegations of limitations in excess of those in the RFC assessment described

previously. *Id.* at 22-23.

If a claimant produces objective medical evidence of an underlying impairment that could

reasonably be expected to produce the symptoms alleged and no affirmative evidence of

malingering exists, the ALJ must assess the credibility of the claimant regarding the severity of

symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008);

*Smolen v. Chater*, 80 F3d 1273, 1281-82 (9th Cir 1996); *Cotton v. Bowen*, 799 F2d 1403, 1407-08

(9th Cir 1986); Social Security Ruling ("SSR") 96-7p, 1996 WL 374186.

Here the ALJ found Tracer's medically determinable impairments could reasonably be

expected to cause her alleged symptoms. Admin. R. 22. Under these circumstances, an ALJ may

discredit the claimant's testimony regarding the severity of symptoms by providing specific

reasons for the credibility finding, supported by the evidence in the case record. SSR 96-7p,

1996 WL 374186, at *4. The ALJ must make findings that are sufficiently specific to permit the

reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Orteza v. Shalala*, 50 F.3d 748, 750

(9th Cir. 1995). In addition, the Court of Appeals for the Ninth Circuit demands a clear and

convincing justification for the ALJ's credibility finding. *Carmickle*, 533 F.3d at 1160; *Smolen*,

80 F.3d at 1283.

In making a credibility determination, the ALJ should consider objective medical

evidence, the claimant's treatment history, daily activities, and work record, and the observations

of treating sources and third parties with personal knowledge of the claimant's functional

limitations.  20 C.F.R. §§ 404.1529(c), 416.929(c); *Tommasetti*, 533 F.3d at 1039; *Smolen*, 80

F.3d at 1284; SSR 96-7p, 1996 WL 374186.

The ALJ considered the available evidence relating to the proper factors.  The objective

medical evidence and treatment history are remarkably sparse, and predate the time for which

Tracer claims disability.  In November 2000, Tracer received mental health treatment on a crisis

basis from LCMH, after making statements that were interpreted by a teacher as suicidal. Pat

McChesney, P.M.H.N.P., found Tracer's mood euthymic and affect congruent, but Tracer was

clearly anxious. Tracer appeared to be a concrete thinker with borderline intellectual functioning.

McChesney diagnosed major depression and borderline personality disorder and assessed serious

impairment in global functioning.  McChesney prescribed Zoloft for depression and Risperdal to

help Tracer sleep.  Admin. R. 278.

Tracer began counseling with Marie Turner, M.A.  She had subjective symptoms of

depression, anxiety, and panic attacks, but reported good relationships with teachers and fellow

students.  She had no history of mental health hospitalizations or treatment other than counseling

for truancy.  Her education history included special education during grade school, but she was

mainstreamed in middle school.  Turner's mental status evaluation was notable for memory

impairment, below average intelligence, and diminished sleep, energy, and appetite.  Turner

diagnosed major depression and assessed serious impairment of global functioning, consistent

with McChesney's assessment.  *Id.* at 282-86.

Tracer told McChesney she felt a little better with Zoloft, but despite feeling less

depressed, she continued to have suicidal ideation and was not willing to engage in therapy

sessions without the presence of her mother.  *Id.* at 276, 279.  McChesney  increased Tracer's

Zoloft dosage over the next two months.  At the end of December 2000, Tracer reportedly

continued to isolate in her home, going out only when accompanied by her parents.  Tracer

appeared to have a social phobia and excessive dependence on her mother.  *Id.* at 275.  At the

end of January 2001, McChesney observed that Tracer's depression had improved, but she

continued to isolate at home and refused to ride the bus, even accompanied by her mother.  *Id.*

At this point, Tracer was still a teenager living with her mother.

In October 2002, Tracer applied for a Job Corps program and underwent a prerequisite

medical examination.  She reported a history of depression and anxiety but was taking no

medications or other therapy, apparently having discontinued all treatment by McChesney and

Turner.  *Id.* at 362-66.  After moving from her mother's house to a dormitory to commence the

Job Corps program, Tracer experienced anxiety with repeated panic attacks.  Mental health staff

at the program prescribed Paxil.  In November 2002, Tracer said the Paxil was helping.  In

December, she reported that her Job Corps experience was helping with social issues.  In January

2003, Tracer had recurring panic attacks and episodes described as "attention getting" in which

she reportedly cut and scratched herself.  During February 2003, she expressed feelings of a

threatening nature.  Tracer's counselor recommended a medical separation from the Job Corps

program due to chronic symptoms and behavior, including self endangerment, threatening

another student, ongoing panic attacks, and attention getting behaviors which other students

found distracting.  Tracer was officially separated on March 3, 2003.  *Id.* at 348-61.  She was told

she could return after successfully completing at least four months of counseling with

stabilization on medication.  *Id.* at 350.

Tracer alleges her disability began at this time. She did not attempt to complete the required treatment, however. She did not seek or require treatment of any kind until she went to the hospital in March 2004, for abdominal pain. *Id.* at 290-91. Her next treatment was in July 2005, after a motor vehicle accident. *Id.* at 299-300, 303-05. The remainder of the medical evidence in the case record is comprised of consultative evaluations and opinion statements.

In November 2007, John Ellison, M.D., performed a consultative medical evaluation. He observed Tracer was a poor historian, with flat affect and slow responses apparently reflecting slow memory. Dr. Ellison diagnosed obesity-related ankle and knee pain and chronic low back pain with muscle tightness and reduced range of motion. Admin. R. 337-39.

In December 2007, Ronald Duval, Ph.D., performed a consultative psychodiagnostic evaluation. Dr. Duval found Tracer fully oriented with euthymic mood and poor biographical memory, attributed in part, to lack of effort. Tracer's statements were rife with somatic references. She appeared to be self-pitying and dependent. Dr. Duval estimated her intelligence was no higher than low average. He found Tracer did not meet the diagnostic criteria for a depressive disorder or an anxiety related disorder. He felt Tracer's primary problem was her personality disorder. She exhibited a pathological dependency with unrealistic expectations of assistance from others, particularly her mother. She also had histrionic tendencies resulting in poor judgment and exaggeration of physical problems. Dr. Duval felt these tendencies were enabled by her parents and boyfriend. He opined that the level of pain Tracer alleged was inconsistent with her apparent comfort during her evaluation and the level of depression and anxiety she alleged was inconsistent with her behavior during the examination. Dr. Duval believed Tracer had the cognitive capacity to engage in work within her educational and

intellectual levels.  He opined that Tracer's communication skills and social functioning were limited by her personality disorder, but that she retained the ability to perform basic work activities.  *Id.* at 342-46.

In addition to the medical evidence produced by treating and examining sources, the ALJ considered the expert opinions of agency reviewing physicians based on the case record.  In January 2008, Dorothy Anderson, Ph.D., found the record supported diagnoses of a learning disorder, a somatoform pain disorder, and a personality disorder with dependent and histrionic features.  *Id.* at 307, 308, 313, 314.  She opined that Tracer could understand, remember, and carry out simple tasks, but not complex or detailed tasks, could learn a job with help from a supervisor and then work on her own without special assistance, could get along with coworkers on a routine, social, casual basis, but could not work directly with them or the public.  *Id.* at 321-23.

At the administrative hearing, the ALJ obtained expert testimony from Gayle Monnig, M.S.N., Psy. D., based on her review of the case record.  Dr. Monnig said the absence of testing left her unable to agree with or rule out diagnoses of borderline intellectual functioning and learning disorder.  *Id.* at 37.  She testified that the absence of current treatment or episodes of deterioration during the long gap in treatment suggested Tracer functioned reasonably well without treatment. *Id.* at 39, 44.  Dr. Monnig testified that nothing in the case record provided a basis for her to disagree with the functional assessment offered by Dr. Anderson.  *Id.* at 37-38.

The ALJ considered the objective medical evidence and treatment history in evaluating the credibility of Tracer's subjective claims.  The ALJ found that the record showed Tracer had refused treatment to which she had access.  *Id.* at 17.  This is amply supported by the evidence in

the case record.  She told Dr. Duval she stopped treatment because it was not worth it.  *Id.* at 343.

Indeed, Tracer has not sought or received treatment for her alleged mental impairments at any

time during which she claims to have been disabled by them.  When a claimant does not seek

treatment after the alleged onset of a disabling condition, the ALJ may draw an adverse inference

as to credibility.  *Bruton v. Massanari,* 268 F.3d 824, 828 (9th Cir. 2001).  When a claimant

alleges disability from an impairment, the claimant's lack of effort to obtain available treatment

casts doubt on the sincerity of her claims.  *Flaten v. Sec'y of Health & Human Serv.*, 44 F.3d

1453, 1464 (9th Cir. 1995); *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1993).  Similarly,

noncompliance with a recommended course of treatment supports an adverse inference as to the

credibility of the allegations of disability.  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007);

*Tonapetyan v. Halter,* 242 F.3d 1144, 1147-48 (9th Cir. 2001).

As noted previously, Job Corps medical staff recommended completion of a course of

counseling with stabilization on medications, but Tracer declined to follow that recommendation.

*Id.* at 350.  Tracer had access to medication and counseling and reported that these treatments

were helpful when she utilized them.  Admin. R. 73, 75, 276.  It is not clear that she persisted in

these treatments long enough to derive their full benefit, but it is clear that she did not participate

at any time for which she claims disability.  Accordingly, the ALJ's conclusion that Tracer's

subjective claims of disability are not fully credible flows logically from the evidence of her

treatment history.  The ALJ also relied on Dr. Duval's observation that Tracer did not give full

effort during his examination.  Admin. R. 18, 344.  When a claimant fails to give full effort or

appears to impede the accurate assessment of limitations, it supports an adverse inference as to

credibility. *Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir. 2002).

The ALJ also relied on Tracer's statement that she tried to work but could not obtain a
job due to her youth and lack of experience.  Admin. R. 18, 19, 62, 343.  The statement supports
an inference that Tracer believed circumstances other than disability prevented her from working.
In addition, she reported engaging in activities beyond her alleged limitations, including living
away from her mother with her boyfriend and obtaining food, clothing, and shelter from charities.
*Id.* at 19, 343.  These activities support an inference that Tracer is not as limited by dependence
on her mother or social phobia as she asserted.  The ALJ concluded Tracer was more capable
than she realized.  *Id.* at 19.  This interpretation of the evidence is rational.

Tracer argues her failure to seek treatment should be excused because it is consistent with
her alleged mental impairments.  She contends she did not seek treatment because of personality
traits which caused her to seclude herself, avoid going out in public, and avoid interactions with
others.  This might be a rational interpretation of the evidence, although it does not account for
Tracer's ability to obtain the treatment she did receive, move away from home to live with her
boyfriend, seek out assistance from local charities, and try to find work.  Even if the
interpretation urged by Tracer is rational, the court must defer to the factual findings in the
Commissioner's decision, if they are supported by inferences rationally drawn from substantial
evidence in the record as a whole.  *Andrews*, 53 F.3d at 1039-40.

Tracer also argues that the ALJ misinterpreted the evidence of Tracer's compliance with
treatment during the Job Corps program.  The ALJ found that Tracer had been discharged from
the Job Corps program for noncompliance with treatment.  *Id.* at 17.  The record does not fully
support that conclusion.  Although Tracer's interpretation of the evidence appears to be correct,
her argument does not justify overturning the ALJ's credibility finding.  Not all of an ALJ's

reasons for discrediting a claimant must be upheld, as long as substantial evidence supports the determination. *Carmickle*, 533 F.3d at 1162.

      B.      Lay Witness Statements

      Tracer contends the ALJ improperly discredited the testimony her mother gave at the administrative hearing.  An ALJ must consider lay witness statements concerning a claimant's ability to work. *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1053 (9th Cir. 2006).  Lay statements as to the claimant's symptoms or how an impairment affects the ability to work cannot be disregarded without comment. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). If the ALJ wishes to discount the statements of a lay witness, she must give reasons that are germane to the witness. *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001).

      Tracer's mother testified that Tracer chose to stop going to counseling at LCMH because they wanted her to attend sessions alone, without her mother present.  Admin. R. 69.  Tracer's mother testified that Tracer seemed to do well at first in the Job Corps program, but had problems later, possibly because she became involved with the wrong kids.  Tracer's mother was not sure what happened.  Job Corps staff required Tracer to see counselors and eventually discharged her from the program due to mental health issues. *Id.* at 66.  After being discharged, Tracer lived with her mother, but soon moved away to live with a boy she had met at Job Corps. They stayed together for several years, living in trailers or campers parked at the home of the boy's parents, at the home of Tracer's father, and at other locations. *Id.* at 69.

      Tracer's mother said Tracer was in better shape physically since moving back in with her. She said she had to make Tracer do things for herself on her own.  She said Tracer did not leave the house on her own.  Tracer's mother believed that Tracer's mental issues would not go away

on their own. *Id.* at 70-71. Tracer's mother testified she did not think Tracer would be capable

of working, even if she only had to do simple tasks and did not have to deal with the public,

because of memory problems. *Id.* at 71-72. Tracer had gone downhill in the years she was living

with her boyfriend in various areas of Oregon. *Id.* at 73-74.

The ALJ considered the testimony from Tracer's mother and found it credible. *Id.* at 21.

The ALJ believed it accurately described her observations of Tracer's tendency to isolate herself

and limit her activities. The ALJ correctly noted that these observations reflected Tracer's

activities and functional level in the absence of treatment. It follows that the observations did not

establish Tracer's functional capacity while receiving appropriate treatment. The ALJ believed

the observations showed that lack of motivation was a component of Tracer's problems. These

inferences flow rationally from the record as a whole. The ALJ found the lay witness testimony

credible; she was not required to explain why it was rejected, because it was not. The ALJ's

evaluation of the lay witness statements, therefore, is upheld.

III.    Development of the Record

Tracer contends the ALJ failed to properly develop the record because she did not obtain

an updated medical expert opinion based on the Job Corps records which Tracer submitted after

the administrative hearing. Tracer points out that Drs. Duval, Anderson, and Monnig did not

have the benefit of the Job Corps records when they formulated their opinions of her functional

capacity.

A claimant must bring to the attention of the Commissioner everything that shows she is

disabled. 20 C.F.R. §§ 404.1512(a), 416.912(a). This requirement recognizes that the claimant

is in a better position to provide information about her medical condition and identify sources of

such information.  *Yuckert*, 482 U.S. 137, 140 n.5 (1987).  Once a claimant has identified sources

of information and the Commissioner has considered the information, a duty to develop the

record further is triggered only if there is ambiguous evidence or the record is inadequate to

allow for proper evaluation of the evidence.  *Mayes v. Massanari*, 276 F3d 453, 459-60 (9th Cir.

2001).  An ALJ must obtain an updated opinion from a medical expert when additional medical

evidence is received that  in the opinion of the ALJ may change the medical expert's finding that

the claimant's impairment is not equivalent to any of the presumptively disabling impairments

listed in the regulations.  SSR 96-6p, 1996 WL 374180 at *4.

　　　　Tracer's argument fails because she did not identify ambiguous evidence, the ALJ did not

find the record inadequate to evaluate her claim, and she does not contend her condition is

equivalent in severity to any of the presumptively disabling conditions in the Listing of

Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ did not have the opinion

that the Job Corps records may have changed Dr. Monnig's findings.  Dr. Monnig testified that

she was primarily interested in Tracer's current function.  She would not likely have been swayed

by Job Corps records which predated the onset of disability.  Admin. R. 39.  In addition, the Job

Corps separation documents recommended that Tracer follow a regular course of counseling for

at least four months and achieve stabilization with medication before she attempted to return to

the program.  This shows that the Job Corps providers considered Tracer inadequately treated at

the time the records were produced.  Accordingly, the Job Corps records were not probative of

Tracer's condition when properly following appropriate treatment.  Nor do they suggest that

Tracer was unable to follow such treatment because they indicate Job Corps did not have the

services required to treat her.

The record shows that the circumstances under which the ALJ would have been required to obtain an updated medical opinion or develop the record more fully were absent. Accordingly, the  the ALJ did not err in her development of the record.

IV.    Vocational Evidence

At step five of the decision-making process, the Commissioner must show that jobs exist in the national economy that a person having the vocational factors and functional limitations of the claimant can perform. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).  The ALJ can satisfy this burden by eliciting the testimony of a VE with a hypothetical question that sets forth all the limitations of the claimant. *Andrews*, 53 F.3d at 1043.  Here, the VE testified that a person with Tracer's RFC could perform the work activities required in light unskilled occupations such as packing line worker, small products assembler II, and bagger.  Admin. R. 78-79.  Tracer contends the VE's testimony conflicts with information in the DOT, a publication of the Department of Labor which is the Commissioner's primary source of information about the requirements of work.  SSR 00-4p,  2000 WL 1898704, *2.

When a VE provides information about the requirements of an occupation, the ALJ must determine whether that information conflicts with the DOT and obtain a reasonable explanation for any apparent conflict.  If testimony provided by a VE is inconsistent with the DOT, the ALJ must resolve the conflict and explain the resolution before relying on the testimony to find that a claimant is not disabled.  SSR 00-4p, 2000 WL 1898704, *5.

Tracer contends two of the three occupations identified by the VE require abilities beyond her RFC.  Notably, there is no challenge to the third occupation, bagger, which the VE testified represented over 280,000 jobs in the national economy.  Admin. R. 79.  Even if Tracer's

challenge to the VE's testimony were accepted, the Commissioner's conclusion that a significant number of appropriate jobs exist is supported by the unchallenged portion of the VE's testimony. As a result, any error in the ALJ's reliance on the VE's testimony was harmless. *Carmickle*, 533 F.3d at 1162-63 & n. 4.

Tracer's challenge to the VE's testimony is not persuasive, either.  The DOT job definitions include a summary of the actions required, instructions followed, judgments made, the specific tasks the worker performs, and so forth, for each occupation.  Notably, Tracer does not contend that she is unable to perform the actions or specific tasks or follow the instructions or make the judgments required in the two challenged occupations.

The DOT provides auxiliary information in a definition trailer comprised of various codes relating to a number of factors.  One such component is the general education development, which approximates the educational level the worker should have achieved for satisfactory job performance in the occupation.  A sub-component of general education development is the reasoning level.  Tracer contends the VE's testimony is inconsistent with the reasoning sub-component of the general education development component of the definition trailer appended to the DOT job descriptions for the two challenged occupations.

The two challenged occupations have a reasoning code of two, which indicates the ability to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions."  DOT, Appendix C, *available at* http://www.oalj.dol.gov/PUBLIC/DOT/ REFERENCES/DOTAPPC.HTM.  Tracer argues this reasoning level is inconsistent with the restriction in her RFC that she is able to understand, remember, and carry out simple tasks.

It is not clear that there is an inconsistency.  The detail required in the definition trailer refers to instructions, but the detail precluded by Tracer's RFC refers to tasks.  An occupation involving detailed instructions for performing simple tasks would be consistent with both the reasoning level 2 and Tracer's RFC.  Courts have found the ability to carry out simple tasks consistent with reasoning level 2.  *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (level two reasoning appears consistent with "simple and routine work tasks"); *Money v. Barnhart*, 91 Fed. Appx. 210, 214 (3rd Cir. 2004) (reasoning level two does not contradict limitation to simple, routine, repetitive work); *Harrington v. Astrue*, No. 07-1330-JM, 2009 WL 102689 at *2 (S.D. Cal. Jan. 14, 2009) (simple, repetitive work is consistent with the definition of GED reasoning level two); *Koch v. Astrue*, No. 08-609-PK, 2009 WL 1743680 at *17 (D. Or. June 15, 2009) (level two reasoning is consistent with simple, routine tasks); *Meissl v. Barnhart*, 403 F. Supp. 981, 984 (C.D. Cal. 2005) (same).

Based on the foregoing, the court is not persuaded that there is a conflict between the VE's testimony and the DOT job descriptions.  To the extent the ALJ erred in relying on the VE's testimony regarding the two challenged occupations, the error was harmless because the ALJ's conclusion remains supported by the unchallenged VE testimony regarding the third occupation.

/ / /

/ / /

/ / /

/ / /

/ / /

CONCLUSION

The Commissioner's decision is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole.  Under these circumstances, the court must affirm the Commissioner.  42 U.S.C. § 405(g); *Batson,* 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039-40.  For the foregoing reasons, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

DATED this 12th day of July, 2011.


 /s/ Marco A. Hernandez
Marco A. Hernandez
United States District Judge